UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHALA MALEK,<br><br>                         Plaintiff,<br><br>v.<br><br>VALENTIA APARTMENTS, LLC, et al.,<br><br>                         Defendants. | Case No.:  25cv2076-LL-BLM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>**[ECF No. 21]** |

Pending before the Court is Defendants Valentia Apartments, LLC, Shea Properties Management Company, Inc., and Danielle Harris' (collectively "Defendants") Motion to Dismiss Plaintiff Shala Malek's ("Plaintiff") First Amended Complaint [ECF No. 18 ("FAC")] pursuant to Rules 12(b)(6) and 12(e) (the "Motion"). ECF No. 21. Plaintiff opposed the Motion and Defendants replied. The Court finds this matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1. For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss.

## I.      FACTUAL BACKGROUND

Plaintiff is a 62-year-old lessor of Valentia Apartments who suffers from several disabilities, including "multiple chemical sensitivities ('MCS'); osteoarthritis, of multiple

joints, osteoporosis, chronic neck/back pain, unsteady gait, chronic fatigue, chronic fibromyalgia, severe anxiety, allergy contact dermatitis, and neuropathy . . ." and requires an oxygen tank to assist her breathing. FAC ¶¶ 4–5, 15. She first signed a lease agreement with Defendants for rental unit 336 on October 31, 2019. *Id.* ¶ 13. Prior to signing the lease, Plaintiff informed Defendants that it was necessary for her and her son to "reside in an environment that was completely free from mold, hazardous chemicals, dust, and allergens" due to her and her son's asthma. *Id.* ¶ 15.

Upon moving into unit 366, Plaintiff noticed several water leaks around the apartment which led to "damp, moist and wet conditions" that were "hazardous" to her health. *Id.* ¶ 20. Because of this, Plaintiff requested transfer to unit 242 in November 2019. Unfortunately, unit 242 had similar conditions, including "defective weather stripping at the front door" and "defectively installed" rain gutters, which allowed water to accumulate in and around the unit and exacerbated Plaintiff's respiratory illnesses. *Id.* ¶¶ 27–29, 37. On January 14, 2020, Plaintiff sent an email to Defendant Harris, the on-site property supervisor of Defendants, with a list of items that needed repair. *Id.* ¶¶ 8, 25. Defendants either ignored Plaintiff's requests or "ma[d]e faulty and unprofessional attempted repairs." *Id.* ¶ 37.

That same year, Defendants attempted to evict Plaintiff, alleging she was failing to pay her rent. *Id.* ¶ 31. Towards the end of 2020, Defendants "forced" Plaintiff to sign an agreement that allowed her to remain in the unit for an additional six months as an accommodation for her disabilities. *Id.* ¶ 33. On February 5, 2021, Defendants served Plaintiff with a 60-day notice of termination containing "false allegations of violations of the lease agreement" and "unsubstantiated allegations of creating disturbances" in unit 242. *Id.* ¶ 35.

From 2022 to 2023, Plaintiff continued informing Defendants of defects and hazardous chemicals in her unit that were negatively impacting her health, some of which Defendants failed to repair. *Id.* ¶¶ 40–41, 43, 53, 54, 55. On October 2, 2023, one of Defendants' employees showed Plaintiff a two-bedroom "disability accessible" rental unit.

24cv2076-LL-BLM

*Id.* ¶ 45. Defendant Harris told Plaintiff that the employee should not have done so and told other employees in the rental unit they were not to have any contact with Plaintiff without her authorization. *Id.* ¶ 46. On October 5, 2023, Defendant Harris informed Plaintiff she was not eligible for transfer to another unit because Plaintiff "supposedly" owed Defendants money from a "COVID-19 rent dispute." *Id.* ¶ 48. That same day, Plaintiff hired a mold inspection specialist who determined that there were "elevated moisture levels in the kitchen, living room, both bedrooms and both bathrooms" and "elevated humidity levels above 80%" in Plaintiff's unit. *Id.* ¶ 56. The inspector's findings also indicated mold growth under the kitchen sink and "the possibility of [s]tachybotrys or black mold" present inside the unit's walls *Id.* ¶ 61. The inspector recommended Plaintiff's personal items be sterilized and moved to prevent further contamination. *Id.* ¶¶ 62–63. Defendants refused to sterilize or move Plaintiff's items and agreed to remediate the kitchen area only. *Id.* ¶ 64. Plaintiff's sensitivity to these conditions grew worse as she remained in the unit, and as a result, she relocated to a hotel on October 29, 2023. *Id.* ¶¶ 65, 69. Plaintiff then filed the current suit on November 5, 2024.

## II.    LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). To survive a Rule 12(b)(6) motion, a plaintiff only needs to plead "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory,

24cv2076-LL-BLM

unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quotation omitted).

### III.    DISCUSSION

Defendants claim that all of Plaintiff's ten causes of action are barred by statute of limitations and must be dismissed. Mot. at 2.

### A. Statute of Limitations

### 1.  Fair Housing Act and Fair Employment Housing Act

Under the Fair Housing Act ("FHA"), a plaintiff must file suit within two years after "the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). However, where a plaintiff "challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitation period, the complaint is timely when it is filed within [two years] of the last asserted occurrence of that practice." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81 (1982). Congress has since codified this continuing violation doctrine by amending the FHA to include both "the occurrence [and] the termination of an alleged discriminatory housing practice" as events triggering the two-year statute of limitations. 42 U.S.C. § 3613(a)(1)(A). *Garcia v. Brockway*, 526 F.3d 456, 461–62 (9th Cir. 2008).

Defendants argue that all allegations occurring before November 5, 2022, are time-barred because the continuing violation doctrine does not apply to Plaintiff's claims. Mot. at 7–8. First, Defendants argue that the continuing violation doctrine does not apply to "continual ill effects from an original violation." *Id.* at 8–9 (citing *Garcia*, 526 F.3d at 462–63). However, the FAC clearly details a series of conduct dating back to 2019, not a series of ill effects from one violation. *See generally* FAC. As such, Court is not persuaded by this argument.

Second, Defendants argue that Plaintiff's allegations describe "separate and distinct incidents" rather than a "series of related and continuing discriminatory acts." Mot. at 9. As support, Defendants claim that vacating a unit terminates all violations relating to that unit. *Id.* at 9–11. However, Plaintiff's claim arises out of Defendants' conduct, which

24cv2076-LL-BLM

Plaintiff alleges has continued despite transferring units. *See generally* FAC.

Here, Plaintiff has alleged numerous related incidents throughout 2019 to 2023, including an attempt to charge Plaintiff additional rent for her initial transfer in 2019[1] (FAC ¶ 22), harassment and threats of eviction during the COVID-19 moratorium in 2020 (FAC 32), serving Plaintiff with a 60-day notice to terminate tenancy with "false allegations of violations of the lease agreement" in 2021 (FAC ¶ 35), failure to successfully repair a water leak despite repeated complaints from Plaintiff in 2022 (FAC ¶¶ 39–40), refusal to transfer Plaintiff to a "disability accessible" unit in 2023 (FAC ¶ 48), illegal rent increases from 2021 to 2023 (FAC ¶ 42), and prohibiting other employees from assisting Plaintiff in 2023 (FAC ¶ 46). Accordingly, a complaint is timely when "based not solely on isolated incidents . . . but a continuing violation manifested in a number of incidents—including at least one . . . that [wa]s asserted to have occurred within the [limitations] period. *Garcia*, 526 F.3d at 462. Thus, we find that the FAC has at least minimally detailed a series of discriminatory conduct from 2019 to 2023 to give the Defendants "fair notice" and for this Court to apply the continuing violation. *See Patton v. Hanassab*, No. 14CV1489 AJB WVG, 2015 WL 589460, at *7 (S.D. Cal. Feb. 12, 2015) (finding notices to vacate, tenancy termination notices, and particular comments made by defendants to plaintiff were enough to "detail a series of discriminatory conduct" where the continuing violation doctrine would apply); *see also Baker v. City of San Diego*, 463 F. Supp. 3d 1091, 1096, 1101–02 (S.D. Cal. 2020) (applying the continuing violation doctrine where allegations of new zoning policies, development of the "Live Well Center," and a voucher system that disproportionally concentrates low-income minorities was enough to constitute a "a pattern

---

[1] Defendants argue that the attempt to charge additional rent cannot be a continuing violation since Plaintiff was not ultimately charged the $450. Mot. at 9. Nonetheless, we find this attempt can constitute discriminatory conduct even if it was never realized. *See San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 475 (9th Cir. 1998) ("The Supreme Court has long held that claims brought under the [Fair Housing] Act are to be judged under a very liberal standing requirement.").

24cv2076-LL-BLM

and practice of alleged discrimination of concentrating majority of the low-income housing in minority neighborhoods . . .").

Similarly, we decline to dismiss Plaintiff's Fair Employment and Housing Act ("FEHA") claim because its statutory language mirrors that of the FHA. *See Hanassab*, 2015 WL 589460, at *7 (applying the continuing violation doctrine to both FHA and FEHA claims under the same facts); *see also Alcaraz v. KMF Oakland LLC*, No. 18-CV-02801-SI, 2020 WL 4539099, at *8 (applying the continuing violation doctrine to FEHA claims because the FEHA's statutory language mirrors the FHA's).

Accordingly, Defendants' Motion is **DENIED** as to Plaintiff's FHA and FEHA claims.

### 2. Unruh Civil Rights Act

The Unruh Civil Rights Act, as codified in California Civil Code Section 51, states: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). Because the Unruh Act does not have its own statute of limitations, courts must borrow statutes of limitations from other laws. *Gatto v. Cnty. of Sonoma*, 98 Cal. App. 4th 744, 753 (2002). Generally, a two-year statute of limitations applies to claims that derive from the common law (Cal. Civ. Proc. Code § 335.1), and a three-year statute of limitations applies to liability created by statute (Cal. Civ. Proc. Code § 338). *Id.* at 759.

Here, Plaintiff alleges that Defendants failed to provide her with reasonable accommodation for housing. FAC ¶¶ 105–07. We are aware of no duty requiring affirmative accommodation for those with disabilities that existed in common law. Rather, early common law doctrine only required "a few, particularly vital, public enterprises . . . to serve all members of the public without arbitrary discrimination." *Gatto*, 98 Cal.App.4th at 756 (citing *West Shield Investigations & Sec. Consultants v. Superior Ct.*, 82 Cal. App.

4th 935, 953 (2000)). Thus, we hold that Plaintiff's claim does not derive from common law principles and is therefore subject to a three-year statute of limitations. Accordingly, all allegations relating to Plaintiff's Unruh Civil Rights Act claim that occurred before November 5, 2021 are time-barred.

### 3. California Civil Code § 54.1

Similar to claims under the Unruh Civil Rights Act, California Civil Code section 54.1 ("Section 54.1") does not have its own statute of limitations. Courts must borrow statutes of limitations from other laws, and the applicable limitation depends on whether the claim's liability existed in common law or if it was created by statute.

The Court agrees with both parties that the applicable statute of limitations for Section 54.1 claims is three years. *See Indep. Hous. Servs. of San Francisco v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1359 (N.D. Cal. 1993) (holding that Section 54.1 claims do not derive from the common law and are therefore subject to a three-year statute of limitations); *see also Gatto*, 98 Cal. App. 4th at 759 n. 11 (noting, in dicta, that the court in *Independent Housing Services* may have been correct in holding that liability under Section 54.1 "was a type that did not exist at common-law."); *Kemp v. Regents of Univ. of Cal.*, No. C-09-4687 PJH, 2010 WL 2889224, at *6–7 (N.D. Cal. July 22, 2010) (analogizing Title II ADA claims to Section 54.1 claims and holding that they are subject to a three-year statute of limitations because they do not derive from the common law). Thus, all allegations relating to Plaintiff's Section 54.1 claim that occurred before November 5, 2021 are time-barred.

### 4. Negligence

The statute of limitations for most negligence claims is two years. Cal. Civ. Proc. Code § 335.1. The statute of limitations for exposure to hazardous materials and toxic substances is also two years. Cal. Civ. Proc. Code § 340.8. A negligence claim generally accrues upon occurrence of the last act necessary to complete the cause of action. *See Fox v. Ethicon Endo-Surgery*, Inc., 35 Cal. 4th 797, 806–07 (2005).

Defendants argue that Plaintiff's entire negligence claim should be dismissed

24cv2076-LL-BLM

because her causes of action for negligence are based on events outside the statute of limitations. Mot. at 8. However, Plaintiff's negligence claim is based in part on events that occurred after November 5, 2022, such as the Defendants' failure to correct a water leak after Plaintiff complained for the second time on December 20, 2022 (FAC ¶¶ 40–42), Defendants' failure to advise Plaintiff of the use of hazardous chemicals in or around her unit in 2023 (FAC ¶ 44), and Defendants' refusal to remediate anything other than the kitchen area of Plaintiff's unit after a mold inspector recommended it so in 2023. (FAC ¶¶ 62–64). As such, only the allegations that occurred before November 5, 2022 are time-barred for Plaintiff's negligence claim.

### 5.  Negligent Infliction of Emotional Distress ("NIED")

The statute of limitations for a NIED claim is two years. Cal. Civ. Proc. Code § 335.1. The cause of action for a NIED claim accrues "once the plaintiff suffers severe emotional distress as a result of outrageous conduct on the part of the defendant." *Wassmann v. S. Orange Cnty. Cmty. Coll. Dist.*, 24 Cal. App. 5th 825, 852–53 (2018) (internal quotations omitted).

Again, Defendants argue that Plaintiff's NIED claim should be dismissed because her NIED claim is based on events outside the statute of limitations. Mot. at 8. However, Plaintiff's NIED claim is based in part on events that occurred after November 5, 2022, such as Defendants' harassment of Plaintiff whenever she requested repairs to her rental unit (FAC ¶ 66), several of which were made after 2022 (*See generally* FAC) and Plaintiff's relocation to a hotel room after the mold inspection findings, where she has been "forced to pay exorbitant hotel bills, transportation costs, meals, and other expenditures . . . [having] the effect of bankrupting her of her retirement funds" in 2023 (FAC ¶¶ 69–70). Thus, only the allegations that occurred before November 5, 2022 are time-barred for Plaintiff's NIED claim.

///

///

### 6.  Breach of Warranty of Habitability and Breach of Covenant of Quiet

**Enjoyment**

Breach of the implied warranty of habitability and implied covenant of quiet enjoyment claims are contract claims which are subject to a four-year statute of limitations. *See* Cal. Civ. Proc. Code § 337(a) (contract claims must be brought within four years); *see also Hjelm v. Prometheus Real Est. Grp., Inc.*, 3 Cal. App. 5th 1155, 1169 (2016) (noting that claims for breach of implied warranty of habitability and the implied covenant of quiet enjoyment are contract claims); *Adams v. Cmty. Hous. P'ship*, No. 23-CV-06073-WHO, 2024 WL 1643682, at *2 (N.D. Cal. Apr. 15, 2024) (holding that a four-year statute of limitations applies to claims for breach of the implied warranty of habitability and implied covenant of quiet enjoyment). Thus, all allegations relating to the breach of implied warranty of habitability and breach of the implied covenant of quiet enjoyment claims that occurred before November 5, 2020 are time-barred.

### 7. Private Nuisance

The limitations period for private nuisance claims depends on the nature of the harm caused by the nuisance. A three-year statute of limitations applies to private nuisance actions based on injury to real property. *Wilshire Westwood Assocs. v. Atlantic Richfield Co.*, 20 Cal. App. 4th 732, 743–45 (1993). A two-year statute of limitations applies to private nuisance actions based on personal injury. Cal. Civ. Proc. Code § 335.1.

Plaintiff alleges personal injury to herself, not to real property. *See generally* FAC. Thus, a two-year statute of limitations applies here. Accordingly, all allegations relating to Plaintiff's private nuisance claim that occurred before November 5, 2022 are time-barred.

### 8. Retaliatory Eviction

Plaintiff brings her retaliatory eviction claim under California Civil Code section 1942.5 ("Section 1942.5"). Because Section 1942.5 does not have its own statute of limitations, courts must borrow statutes of limitations from other laws. Here, California Code of Civil Procedure section 340(a)'s one-year statute of limitations applies to "[a]n action upon a statute for a penalty or forfeiture . . ." Since Section 1942.5 allows for punitive damages, which are "designed to punish or penalize" and because Plaintiff also

seeks punitive damages in conjunction with this claim, Plaintiff's Section 1942.5 claim is subject to a one-year statute of limitations. *See* FAC ¶ 159; *Altamirano v. Matsu, LLC*, No. CV1206023GAFAJWX, 2013 WL 12404713, at *6 (C.D. Cal. Jan. 7, 2013).

Neither party disputes the statute of limitations is one year. However, Defendants still argue that Plaintiff's claim is time-barred because "Plaintiff voluntarily vacated the unit on October 29, 2023" and because "the FAC is patently unclear regarding how Defendants allegedly engaged in retaliatory eviction . . ." Mot. at 10. In response, Plaintiff claims that she was served with a "retaliatory" Notice of Termination on October 30, 2024. Opp'n at 16. However, nowhere in her FAC does she make any mention of this notice. *See generally* FAC. Rather, she cites to her Motion for a Temporary Restraining Order and Preliminary Injunction, which falls outside of the pleadings. Because Federal Rule of Civil Procedure 12(d) mandates that we cannot consider facts outside the pleadings unless we treat this motion as one for summary judgment, we only consider Plaintiff's vacating of the unit in 2023. Thus, this Court finds that Plaintiff's retaliatory eviction claim is time-barred. Accordingly, Defendants' Motion is **GRANTED** as to Plaintiff's retaliatory eviction claim.

### 9. California Unfair Competition Law ("UCL")

The statute of limitations for UCL claims is four years. Cal. Bus. & Prof. Code § 17208. "*Any* action on *any* UCL cause of action is subject to the four-year period of limitations created by that section." *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 179 (2000) (emphasis in original). Thus, all allegations relating to Plaintiff's UCL claim that occurred before November 5, 2020 are time-barred.

### 10. Motion for a More Definite Statement

Defendants also move for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) as to any surviving causes of action. Mot. at 16–19. Under Rule 12(e), a party may move for a more definite statement if the pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Evid. 12(e). "A motion for more definite statement pursuant to Rule 12(e) attacks the unintelligibility of the complaint,

24cv2076-LL-BLM

not simply the mere lack of detail . . .” *Beery v. Hitachi Home Elecs. (Am.), Inc.*, 157 F.R.D. 477, 480 (C.D. Cal. 1993). “[M]otions for more definite statement are viewed with disfavor, and are rarely granted.” *C.B. v. Sonora Sch. Dist.*, 691 F. Supp. 2d 1170, 1191 (E.D. Cal. 2010) (citations omitted).

Defendants move for a more definite statement, characterizing the FAC as a “shotgun pleading” because it “group[s] defendants together without identifying what the particular defendants specifically did wrong,” and because it “incorporates by reference” Plaintiff’s whole collection of allegations in each cause of action. Mot. at 12. However, from our reading of the FAC, we find it is “specific enough to apprise the defendant of the substance of the claim asserted against him or her.” *San Bernardino Pub. Emples. Ass’n v. Stout*, 946 F. Supp. 790, 804 (C.D. Cal. 1996).

Here, every Defendant and their respective conduct is referenced under every cause of action. For example, under Plaintiff’s first cause of action, she uses “Defendants” to refer to all Defendants and lists the conduct falling under that specific cause of action. FAC ¶¶ 97–104. For her third and fourth causes of action, she specifically names Defendants “SHEA PROPERTIES” and “VALENTIA LLC” and lists the conduct falling under that specific cause of action. FAC ¶¶ 105–109. And although we do not look favorably upon this strategy of incorporating all paragraphs, it still is enough to apprise Defendants of the substance of the claim asserted against them.

However, Plaintiff’s UCL claim is different. Under her UCL claim, Plaintiff “realleges and incorporates herein by reference paragraphs 1 through 96 of the Complaint herein,” refers to Defendants “SHEA PROPERTIES” and “VALENTIA LLC,” but makes no further mention of what conduct out of the 96 allegations applies. FAC ¶¶ 166–67. Nor does Plaintiff cite the specific section of California Business and Professions Code that Defendants allegedly violated. *Id.* In reading paragraphs 166 and 167, it is difficult to ascertain the substance of the UCL claim being asserted against Defendants. Therefore, Defendants’ Motion for a more definite statement is **GRANTED IN PART** solely as to Plaintiff’s UCL claim.

## IV.    CONCLUSION

Accordingly, the Court **ORDERS** as follows:

1. Defendants' Motion is **DENIED** as to Plaintiff's First, Second, and Ninth Causes of Action;

2. Defendants' Motion is **GRANTED IN PART** as to Plaintiff's Third, Fourth, Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Causes of Action; and

3. Defendants' Motion for a more definite statement is **GRANTED IN PART**, but with leave to amend. If Plaintiff wishes to amend, Plaintiff must file an amended complaint by **April 30, 2026**,

**IT IS SO ORDERED**.

Dated:  March 30, 2026

_____
Honorable Linda Lopez
United States District Judge

24cv2076-LL-BLM